IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHAN HOWARD, | ) |
| Petitioner | ) Case No. 1:19-cv-00155 |
| vs. | ) |
| | ) RICHARD A. LANZILLO |
| SUPERINTENDENT THOMAS MCGINLEY, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, DISTRICT ATTORNEY OF ERIE COUNTY, | ) UNITED STATES MAGISTRATE JUDGE ) ) MEMORANDUM OPINION AND ) ORDER ON PETITION FOR WRIT OF ) HABEAS CORPUS (ECF No. 1) |
| Respondents | ) |

MEMORANDUM OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus filed by Nathan Howard pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner is incarcerated at the State Correctional Institution at Coal Township, serving a sentence imposed by the Court of Common Pleas of Erie County, Pennsylvania. For the reasons that follow, the petition will be denied.[1]

I.  Background

The Pennsylvania Superior Court summarized the facts of the underlying criminal case as follows:

> On April 26, 2014, police officers conducted surveillance of the El Patio Motel in Millcreek Township as part of an investigation of alleged drug activity. Officers received information that an individual known as "NASS" (Carnell Tinson) had been selling heroin from motel room 123. While conducting surveillance of the motel, officers observed [Howard] and Tinson enter room 123 at 5:07 p.m. At approximately 7:45 p.m., the officers saw Tinson exit room 123, enter a vehicle, and drive away. Officers followed Tinson but did not apprehend him.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

1

> At approximately 8:45 p.m., police officers executed a search of room 123 pursuant to a warrant. Inside the room the officers found [Howard], another individual, an envelope containing a quantity of heroin approximately half the size of a golf ball in plain view on the bed, a digital scale, lottery tickets, and a duffel bag belonging to [Howard]. Inside of the duffel bag was a denim jacket with $1,610 in cash in one of the pockets. Detective Adam Hardner found a cell phone in plain view in a bedroom. [Howard] admitted the cell phone belonged to him and consented to a search of the phone.
>
> James Krayeski, a police informant, testified that he had purchased heroin from Tinson on several prior occasions and had contacted Tinson by cell phone to arrange the transactions. Krayeski had Tinson's cell number and gave it to the officers. There were two incoming text messages on [Howard's] cell phone originating from Tinson's cell phone number. When Detective Hardner read the text messages out loud to [Howard], [Howard] stated, "that mother fucker set me up." These text messages, sent at 8:31 p.m. and 8:42 p.m., stated, respectively, "flush the work" and "they are out back behind the building." Detective Hardner testified that, in his experience, "work" is a term that refers to drugs. Lieutenant Michael Nolan of the Erie Police Department Drug and Vice Unit testified that drug dealers typically accumulate large amounts of cash and use lottery tickets as packing material for heroin. Detective Hardner testified that, based on his experience, the text message "flush the work" would mean "flush the drugs down the toilet because the police are there."

ECF No. 5-1 at 1-3 (citations to trial transcript omitted).

A review of the record and the criminal docket sheet for Howard's underlying conviction in *Commonwealth v. Howard*, No. CP-25-CR-0001240-2014 (Erie Cnty. Com. Pl.),[2] reveals the following relevant procedural history.

On January 20, 2015, following a jury trial, Howard was convicted of one count of criminal conspiracy.[3] On April 28, 2015, Howard was sentenced to 20-60 months' imprisonment. On May 8, 2015, Howard filed a post-sentence motion, which was denied. Howard subsequently appealed. The Pennsylvania Superior Court affirmed the judgment of sentence on September 22, 2016. ECF

---

[2] The criminal docket is available at https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-25-CR-0001240-2014&dnh=hGPpUnpyAdUtfnYPXS6txw%3d%3d (last visited October 14, 2020).

[3] 18 Pa.C.S.A. § 903(c). The jury deadlocked on charges of possession of with intent to deliver, possession of a controlled substance and possession of drug paraphernalia, 35 P.S. §§ 780-113(a)(30), (16), and (32). These charges were ultimately *nolle prossed.*

No. 5-1. Howard did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On August 15, 2017, Howard filed a *pro se* petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 et seq. The court appointed counsel for Howard. Appointed counsel filed a supplement to the PCRA petition. On January 10, 2018, the court dismissed the PCRA petition. Howard appealed, and the Pennsylvania Superior Court affirmed the dismissal on October 16, 2018, ECF No. 5-3. Howard filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on April 30, 2019.

Howard filed the instant petition for a writ of habeas corpus on May 29, 2019. Therein, he asserts three grounds for relief:[4] (1) ineffective assistance of trial counsel for failure to raise lack of probable cause to arrest Howard; (2) ineffective assistance of trial counsel for failure to properly litigate a Fourth Amendment claim of illegal search and seizure; and (3) ineffective assistance of counsel for failure to object to false statements introduced at trial. Respondent District Attorney of Erie County filed a Response to the petition on July 25, 2019. ECF No. 5.

II.   Analysis

    A.   Timeliness

Respondent first argues that the instant petition for writ of habeas corpus is untimely and should be dismissed. ECF No. 5 at 2.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and provides:

    (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant

---

[4] Howard initially raised a fourth ground but was granted leave by the Court to amend his petition to eliminate that ground. ECF No. 11.

3

> to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). *Caldwell v. Mahally, et al.*, 2019 U.S. Dist. LEXIS 192046, *17 (W.D. Pa. Nov. 5, 2019). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). *Id.* at *17-18. Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. *Id.* at *18.

Howard asserts three grounds for relief in his petition, all of which stem from his trial counsel's alleged ineffectiveness either before or during Howard's trial. These claims do not

4

implicate newly enunciated constitutional rights or facts that were discovered later. Furthermore, there were no state-created impediments that prevented Howard from raising these claims sooner. Consequently, the "trigger date" for his claim is the date on which Howard's judgment of sentence became final. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

Howard's judgment of sentence became final on October 24, 2016, at the expiration of the 30-day period for filing a petition for allowance of appeal in the Pennsylvania Supreme Court. Pa.R.A.P. 1113(a). The one-year limitations period for filing a habeas corpus petition began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Accordingly, Howard had to file any federal habeas petition by October 24, 2017. Because the instant habeas petition was filed on May 29, 2019, after the one-year limitations period had expired, his petition is statutorily time-barred. Given this deficiency, the Court must determine whether he can take advantage of the statutory tolling provision set out in Section 2244(d)(2).

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. Howard filed his PCRA petition on August 15, 2017, by which time 295 days of his one-year limitations period had expired (October 24, 2016 through August 15, 2017). Those proceedings were "properly filed," and, thus, tolled the statute of limitations until they were concluded on April 30, 2019, when the Pennsylvania Supreme Court denied Howard's Petition for Allowance of Appeal. The statute of limitations started to run again the following day (May 1, 2019), and, at that point in time, Howard had 70 days (365 days - 295 days = 70 days) remaining to file a timely habeas petition. Howard filed the instant petition on May 29, 2019, 28 days later. Thus, his petition is timely.

5

B.  Merits

1.  Legal standards

The Court must consider the following legal principles:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, if a state court rejects a claimed federal violation on the merits, to obtain habeas relief a petitioner must show that the ruling:
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C.§ 2254(d). *See also Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004); *Thomas v. Horn*, 570 F.3d 105 (3d Cir. 2009).
>
> An unreasonable application of federal law focuses on whether the state court unreasonably applied relevant Supreme Court holdings. *White v. Woodall*, 572 U.S. 415, 419-20, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014). A petitioner must show an error so egregious "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102-03, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). An unreasonable determination of the facts is one where the petitioner proves by clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), that the conclusion drawn from the evidence by the state court is so improbable that it "blinks reality." *See Miller-El v. Dretke*, 545 U.S. 231, 266, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005); This is a high bar to clear: as long as reasonable minds might disagree about the correctness of a factual determination, a federal habeas court must defer to the state court's determination. *See Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006).

*Allen v. Kerestes*, 2019 U.S. Dist. LEXIS 193970, at *2-4 (W.D. Pa. Nov. 4, 2019).

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense

entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

Under *Strickland*, it is the petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Harrington v. Richter*, 562 U.S. 86, 104 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).

*Strickland* also requires that a petitioner to demonstrate that he was prejudiced by his trial counsel's deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> [A petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case'—rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Richter*, 562 U.S. at 104] (citing *Strickland*, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." *Id.* (citing *Strickland*, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. *Id.*

*Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

        2.      Ground One:  Failure to raise lack of probable cause to arrest

Howard first claims that his trial counsel provided ineffective assistance in failing to raise a claim that the police lacked probable cause to arrest him. ECF No. 1 at 5-6. Respondent baldly asserts that this claim is meritless, and that Howard has failed to present any "evidence" to support it. ECF No. 5 at 8.

Howard raised this claim in his PCRA petition. In affirming the PCRA court's denial of relief on this claim, the Superior Court found no arguable merit to the argument that there was insufficient probable cause to arrest Howard. The Court explained:

> Probable cause exists where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). We need not discern whether the officer's belief was more likely correct than incorrect. *Id.* A probability of criminal activity, rather than a *prima facie* showing thereof, is sufficient. *Id.* To answer the question, we examine the totality of the circumstances. *Id.* Whether police had probable cause to arrest Howard depends on whether the officers had a reasonable belief that Howard had constructive possession of the contraband.
>
>> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> *Commonwealth v. Brown*, 2012 PA Super 119, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, __ A.3d __, 2013 Pa. LEXIS 609 (Pa. April 3, 2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Sanes*, 2008 PA Super 175, 955 A.2d 369, 373 (Pa.Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

*Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013).

8

> As already set forth herein, the evidence in this case showed that police received information that Carnell Tinson was selling drugs from room 123 of the El Patio Motel. While conducting surveillance, police saw Tinson and Howard enter room 123, and saw Tinson leave the motel room. Thereafter, police executed a search of room 123 pursuant to a warrant, and found Howard, another individual, an envelope containing heroin, a digital scale, lottery tickets, and $1,610 in case in a duffle bag belonging to Howard. In addition, Detective Hardner found a cell phone, which Howard admitted the cell phone belonged to him, and Howard consented to a search of his phone. *See Howard, supra*, 158 A.3d 185, at *1-*3.
>
> Based on this evidence, we find no arguable merit to Howard's argument police lacked sufficient probable cause to arrest him. Howard contends "the 9 grams of alleged heroin was [sic] concealed in the coupon value pack envelope, addressed to the current resident, is *prima facie* evidence of who possessed the alleged contraband." Howard's Brief at 30. This argument, however, ignores the concept of constructive possession and the legal tenet that it is possible for two people to have constructive possession of an item of contraband. *See Hopkins, supra*.
>
> Furthermore, Howard's claim, that the text messages obtained from his phone cannot provide probable cause because he was already placed under arrest at the time Detective Hardner saw the text messages, is misplaced. Even without the text messages, based upon the totality of the circumstances, *i.e.*, Howard's proximity to the contraband and his possession of a substantial amount of case, police had probable cause to arrest Howard for constructive possession. *See Commonwealth v. Anderson*, 302 A.2d 504 (Pa. Super. 1973). Therefore, we reject Howard's argument that trial counsel was ineffective for failing to raise the issue that police lacked probable cause to arrest him.

ECF No. 5-3 at 12-14 (brackets in original).

Howard argues that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[5] ECF No. 2 at 11. He cites two United States Supreme Court decisions, *Ybarra v. Illinois*, 444 U.S. 85 (1979), and *United States v. Di Re*, 332 U.S. 581 (1948), which Howard asserts, stand together for the proposition that mere presence at the scene of illegal activity in not sufficient to establish probable cause to arrest. ECF No. 2 at 12. However, as the remainder

---

[5] Howard also purports to argue that the Superior Court's decision was "an unreasonable determination of facts based on evidence adduced at trial," ECF No. 2 at 12, but he does not develop any such argument.

9

of Howard's argument makes clear, the Superior Court did not rely on Howard's mere presence at the scene in its assessment of probable cause. Howard argues, *inter alia*, that there was insufficient evidence of constructive possession of contraband and a reasonable explanation for Howard possessing $1,610 in cash as a visitor from out of state. *Id.* at 12-14. These arguments fail to show that the Superior Court, in considering the totality of the circumstances and finding probable cause to arrest, made an error so egregious that its ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Further, Howard cannot demonstrate prejudice. In his brief in support of the instant petition, Howard argues that the alleged lack of probable cause to arrest him "should have been [his] strongest potential defense." ECF No. 2 at 15. Even assuming *arguendo* that there was no probable cause to arrest Howard, that would not provide a defense to crimes with which he was charged. Thus, to the extent that Howard argues that the result of the trial would have been different if counsel had raised the lack of probable cause, he is incorrect.

For these reasons, habeas relief is unwarranted as to this claim.

3.  Ground Two: Failure to raise illegal search and seizure

Howard next claims that his trial counsel provided ineffective assistance in failing to properly litigate at the suppression hearing a claim that police illegally searched his cell phone. ECF No. 1 at 7-8. Respondent baldly asserts that this claim is meritless, and that Howard has failed to present any "evidence" to support it. ECF No. 5 at 8.

Howard raised this claim in his PCRA petition. In affirming the PCRA court's denial of relief on this claim, the Superior Court provided the following analysis:

> Howard's fifth claim is that trial counsel was ineffective in failing to display during the suppression hearing the mechanics of how Howard's cell phone worked, to call

10

into question the credibility of Detective Hardner's testimony offered at the suppression hearing and to establish a viable predicate to establish an illegal search of the cell phone.

Howard argues Detective Hardner perjured himself on the witness stand by testifying that when he opened Howard's flip phone, he saw the two text messages. Howard states the fact that the flip cell phone was closed means that the applications were closed. Howard contends evidence to demonstrate the operation of the cell phone would have contradicted Detective Hardner's testimony, and "if one element of the testimony is demonstrably false the suppression [c]ourt could reject and would be in a solid position to reject all the testimony of that declarant including claims of the provision of consent for the search." Howard's Brief at 4.

Howard's argument is predicated on the "false in one, false in all" maxim, which states that "if a witness willfully and corruptly swears falsely to any material fact in a case, the [factfinder is] at liberty to disregard the whole of his testimony." *Commonwealth v. Lilliock*, 740 A.2d 237, 244 (Pa. Super. 1999) (citation omitted).

Here, Detective Hardner testified Howard gave him consent to search his cell phone and the suppression judge found the detective to be credible. The suppression judge also found Howard to be not credible. While Howard relies on the "false in one, false in all" maxim to challenge Detective Hardner's testimony, it is important to point out that "the principle goes no further than to say the [fact-finder] may disregard the testimony, not that [it] must disregard it." *Lilliock, id.* (citation omitted). Here, we find no arguable merit in Howard's claim.

We cannot say that, had Howard presented evidence that contradicted the detective's testimony about how text messages were displayed on Howard's flip phone, the suppression judge would have applied the "false in one, false in all" maxim to the detective's testimony. Indeed, "it is the sole province of the suppression court to weigh the credibility of witnesses, and the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Fitzpatrick*, 181 A.3d 368, 373 (Pa. Super. 2018) (quotations and citation omitted), *appeal denied*, 2018 Pa. LEXIS 4200 (Pa. Aug. 15, 2018). We agree with the PCRA court that Howard's "false in one, false in all" credibility assessment argument "is based on speculation." PCRA opinion and Notice of Intent to Dismiss, 11/29/2017, at 3 (unnumbered). Accordingly, Howard's fifth ineffectiveness claim fails.

ECF No. 5-3 at 14-16 (footnote omitted) (brackets in original).

Howard argues that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

11

of the United States.[6] ECF No. 2 at 16. The sole relevant Supreme Court cases Howard cites are *Strickland* and *Kimmelman v. Morrison*, 477 U.S. 365 (1986). He cites *Kimmelman* only for the principle that *Strickland* is applicable to ineffectiveness claims based on counsel's failure to properly litigate Fourth Amendment challenges. ECF No. 2 at 16.

An application of *Strickland* to the claim of ineffectiveness set forth by Howard reveals no constitutional violation. As the Superior Court found, even if Howard's counsel had successfully impeached Detective Gardner on the matter of how the text messages were displayed on the flip phone, Howard can only speculate as to the effect that impeachment would have had on the relevant factfinder in assessing Detective Gardner's testimony and the effect, if any, of that assessment on the factfinder's subsequent determinations. Howard has not met his burden to establish that there is not just a conceivable possibility that, but for counsel's failing, the result of the relevant proceeding would have been different, but that there is a reasonable and substantial probability that the result of the proceeding would have been different. Howard is not entitled to habeas relief on this issue.

        4.:       Ground Three: Failure to object to false statements

Howard next claims that his trial counsel provided ineffective assistance in failing to object to false testimony presented at trial. ECF No. 1 at 8-9. Respondent baldly asserts that this claim is meritless, and that Howard has failed to present any "evidence" to support it. ECF No. 5 at 8.

Howard raised this claim in his PCRA petition. In affirming the PCRA court's denial of relief on this claim, the Superior Court provided the following analysis:

> Lastly, Howard contends trial counsel was ineffective for failing to object to materially false and inaccurate statements made by police officers. Specifically, Howard contends Lieutenant Michael Nolan and Detective Hardner created a false

---

[6] Howard also purports to argue that the Superior Court's decision was "an unreasonable determination of facts based on evidence adduced at trial," ECF No. 2 at 16, but he does not develop any such argument.

narrative by testifying that the time of the execution of the warrant was 8:45 p.m., and not 8:30 p.m. as stated by the prosecutor in his opening. *See* Howard's Brief at 35. Howard argues:

> This [8:45 p.m.] time frame corroborates witnesses' narrative with the Commonwealth's theory of the case. Specifically, that [Howard] was actively participating in the conspiracy to "watch" or "babysit" the drugs possess[ed]/controlled by Mr. Carnal [sic] Tinson/NASS, room 123 of the El Patio Motel (who the search warrant was for) while Mr. Tinson was away from the room. Evidence to sustain their conspiracy theory, was allegedly, text messaged to [Howard] at 8:31 p.m., which instructed him to "flush the work" ([t]he [p]urported drugs). At 8:41 p.m., Mr. Tinson allegedly text messaged [Howard] again and said "they're out back."
>
> During closing argument, the Commonwealth, argues to the Jury that when the police officers knocked and announced, they heard no noise in the room. Because, 14 minutes prior (8:31 p.m.) to execution of the warrant (8:45 p.m.), [Howard] was allegedly following the instructions of the text message ("flush the work"). [*See*, N.T., 01/15/2015, p.148 n. 7-12.] Using this inference, the Jury was able to draw a conclusion that [Howard], in fact, conspired in the crime of possession of a controlled substance w/intent to deliver. Making the inconsistent time period substantive evidence against [Howard].

Howard's Brief at 35.

> We find no merit in Howard's claim, since an objection to the testimony that the warrant was executed at 8:45 p.m., as opposed to 8:30 p.m., would not have served to refute the Commonwealth's conspiracy theory; it does not matter whether Howard actually acted upon the text message to "flush the work." The significance of the text messages - whether sent to Howard's cell phone before or after police entered the motel room pursuant to the warrant - is that Tinson contacted Howard with instructions to "flush the work" and a warning about police that "they're out back", *i.e.*, statements of a co-conspirator in furtherance of a conspiracy to possess heroin with intent to deliver. Accordingly, Howard did not suffer prejudice based upon trial counsel's failure to object to the testimony that the execution of the search warrant occurred at 8:45 p.m. Therefore, we reject this claim of ineffectiveness.

ECF No. 5-3 at 17-18 (brackets in original).

Howard argues that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

13

of the United States.[7] ECF No. 2 at 24. He first cites *Napue v. Illinois*, 360 U.S. 264 (1959), for the proposition that the prosecution may not knowingly use false evidence to obtain a conviction. ECF No. 2 at 25. In its ruling on this ineffectiveness claim, the Pennsylvania Superior Court did not make any decision as to whether the prosecutor properly introduced false evidence.

Howard also challenges the Superior Court's holding as to the prejudice prong of the ineffectiveness test, citing *Strickland*. He argues:

> Petitioner avers that counsel's admission to the 8:45 narrative prejudiced him. The jury was conflicted about the charges of Constructive Possession, inter ali[a], and delivered a hung jury on those charges. However, based on the Petitioner's alleged complicity in the conspiracy to "watch or baby sit" the drugs, the jury found him guilty of Conspiracy to possess w/intent to deliver heroin. Specifically, following the 8:31 & 8;41 text msgs. 14 mins. prior to the execution of the search warrant, is reasonable that this presumption influenced the jury's decision. There is a reasonable probability that counsel's actions or lack thereof, "shows a probability sufficient to undermine confidence in the outcome ..." Strickland, 466 U.S. 668 (1984)[.]

ECF No. 2 at 28.

This argument fails to meaningfully challenge the Superior Court's holding. The Superior Court held that the timing of the text messages in relation to the execution of the search warrant was meaningless; it was the communication from Tinson to Howard that was significant. The Superior Court applied the *Strickland* standard to the facts at hand in a fair and reasonable manner. Howard cites no Supreme Court decision warranting a different outcome or which the Superior Court unreasonably applied. Accordingly, habeas relief is unwarranted as to this claim.

IV.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a

---

[7] Howard also purports to argue that the Superior Court's decision was "an unreasonable determination of facts based on evidence adduced at trial," ECF No. 2 at 24-25, but he does not develop any such argument.

circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Howard's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability.

An appropriate Order follows.

ORDER

AND NOW, this 29th day of October, 2020, for the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED that Petitioner Nathan Howard's petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED. The Clerk of Court is directed to mark this case CLOSED as of this date.

RICHARD A. LANZILLO
United States Magistrate Judge